IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PENNY LYNN FRADENBURG,

Plaintiff,

No. CIV S-09-3064 DAD

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

ORDER

Defendant.

_______________________________/

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings in accordance with this order.

**PROCEDURAL BACKGROUND**

On May 11, 2005, plaintiff filed applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) under Title XVI of the Act, alleging disability beginning on June 29, 2003 due to her back condition. (Transcript (Tr.) at 145-60.) Plaintiff's applications were denied initially on October 7, 2005, and upon reconsideration on April 20, 2006. (Tr. at 91, 114-27.) Pursuant to plaintiff's

request, a hearing was held before an Administrative Law Judge (ALJ) on September 19, 2007. (Tr. at 111, 291-311.) Plaintiff was represented by an attorney and testified at the hearing, as did two medical experts. (Tr. at 291-92.) In a decision dated November 21, 2007, the ALJ found plaintiff not disabled. (Tr. at 91-100.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007. (Exhibit D - DIB Insured Status Report)
>
> 2. The claimant has not engaged in substantial gainful activity since June 29, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). (Exhibit D - DIB Insured Status Report)
>
> 3. The claimant has the following medically determinable impairments: history of lumbar laminotomy and foraminotomy with diskectomy, bronchitis/sinusitis, bereavement and adjustment disorder with depressed mood (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521and 416.921).
>
> 5. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2003 through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

(Tr. at 8-18.)

On August 13, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 80-87.) On September 16, 2008, plaintiff appointed new counsel, who sought and received various extensions of time and was granted leave to submit more information and evidence. (Tr. at 79, 8-78.) On October 5, 2009, the Appeals Council denied plaintiff's request for reopening of the appeal but granted plaintiff additional time to file a civil action. (Tr. at 5-6.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing a complaint in this action on November 3, 2009.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff argues that the ALJ committed three principal errors in finding her not disabled: (1) the ALJ failed to fully develop the record; (2) the ALJ committed legal error in rejecting the opinion of plaintiff's treating physician without sufficient evidence to support the rejection of that opinion; and (3) the physical consultative examination relied upon by the ALJ is unreliable on its face and was erroneously used to diminish plaintiff's credibility. Each argument is addressed below.

**I. Failure to Develop the Record**

Plaintiff asserts that the ALJ failed to fully develop the record when he elicited and relied upon two expert medical opinions without having provided those experts with a complete copy of the examination results and opinion of Norman Bensky, M.D., plaintiff's treating physician. Plaintiff notes that Dr. Bensky's Medical Source Statement is seven pages long and contains handwritten entries by the doctor. (Tr. at 284-90.) Plaintiff complains that,

despite the complexity and importance of the treating physician's opinion, the ALJ did not continue the hearing so that the experts would have an opportunity to read the doctor's statement and consider it in the context of the entire record. Instead, after learning that neither expert had received a copy of Dr. Bensky's opinion, the ALJ merely read excerpts from it and questioned the experts about those excerpts.[1] (Tr. at 296-302.)

The transcript of plaintiff's administrative hearing reflects that the ALJ called Loren Dewind, M.D., whom the ALJ described on the record as "our medical expert in internal medicine," as the first witness at the hearing. (Tr. at 293, 295.) After confirming with plaintiff that she still alleged a disability onset date of June 29, 2003, the ALJ addressed Dr. Dewind and asked him, without having sworn the doctor in, to "offer [his] assessment as to what medically determinable impairments the claimant suffers from and the severity of those impairments since that date." (Tr. at 295.) Dr. Dewind's initially stated unsworn opinion was that plaintiff had good results from surgery and chiropractic treatment and had no severe physical problems at the time of the hearing. (Tr. at 295.) After the ALJ read into the record excerpts from Dr. Bensky's medical source statement dated January 19, 2006, Dr. Dewind opined, still without having been sworn in, that if Dr. Bensky's observations were accurate, "they would be severe enough probably for her to meet a listing." (Tr. at 297.)

In response to further questioning after he was sworn in as a witness, Dr. Dewind indicated that he would change his mind about plaintiff having no severe impairment but he was concerned that the last information he had received, which was a mental health summary dated August 2007, had "nothing in there about pain in the leg or back," causing him to wonder "what

/////

[1] The administrative hearing was conducted by videoconference in San Francisco and Eureka. (Tr. at 91.) Plaintiff and her attorney appeared in the Eureka hearing office, while the ALJ presided over the hearing from San Francisco. The two medical experts appeared telephonically. A vocational expert was present in San Francisco but was not called to testify at the hearing. (Tr. at 91, 293.) Because of the telephonic appearances of the medical experts, the ALJ could not simply hand a copy of Dr. Bensky's medical source statement to each expert.

the situation was" at that point in time.[2]  (Tr. at 297.)  The ALJ responded that there were records from Dr. Bensky through October 2006, with an October 3, 2006 record noting low back pain into the right hip, described as aching and chronic, as well as a July 25, 2006 record indicating that plaintiff was still having significant low back pain with right leg sciatic accompaniment.[3] (Tr. at 297-98.)  Dr. Dewind acknowledged that he had received the July 25, 2006 treatment record and that the record noted that plaintiff suffered from insomnia, migraine headaches, and difficulty functioning, in addition to significant low back pain with right leg sciatic accompaniment.  (Tr. at 298.)  Nonetheless, Dr. Dewind complained that there was "no description of the pain or other findings, however."  (Id.)

Next, the ALJ asked Dr. Dewind whether, having "looked over" the treating physician's medical source statement and the same medical source's "brief notes," he "still wish[ed] to conclude that [the claimant] had no severe impairment?"  (Id.)  Dr. Dewind answered, "I don't have a record that shows the degree of impairment."  (Id.)  The ALJ continued:

---

[2]  Dr. Dewind was mistaken when he testified that the last information he had received had "nothing in there about pain in the leg or back."  (Tr. at 297.)  According to the mental health summary dated August 19, 2007, which was prepared by Marilyn Fox, M.A., Licensed Marriage & Family Therapist, plaintiff's "presenting symptoms included anxiety, insomnia, depression, sadness, lethargy, anger, guilt, headaches, lack of appetite, substance dependence, and increased back pain."  (Tr. at 278) (emphasis added).  Plaintiff reported to the therapist that "she had pre-existing back pain resulting from an on-the-job injury, but felt like dealing with her sister's death had exacerbated her physical pain."  (Id.)  Plaintiff stated that both she and her husband were disabled, that she hadn't been able to work for over a year, which had also caused depression and anxiety partly resulting from financial stress, and that "she has no health care benefits, so hasn't been able to get the medical attention she needs."  (Id.)  The therapist had focused on treating plaintiff's trauma but stated that further sessions "would target pain and stress management and the reduction of more generalized anxiety and other symptoms."  (Id.)  The therapist's Axis III diagnosis was "Back Pain."  (Id.)  The therapist noted plaintiff's progress during nine psychotherapy sessions but concluded the report as follows:  "However, it appears that some depression, anxiety and other symptoms resulting from her pain level and the effect the injury has had on her social and occupational functioning will remain indefinitely."  (Tr. at 279.)

[3]  The two medical records cited by the ALJ are found in Exhibit 10F.  (Tr. at 271-76.)  The record dated October 3, 2006 also indicates that the pain reported by plaintiff was rated at a level 5 on a scale of 10.  (Tr. at 272.)

ALJ Okay. So you're not willing to accept what Dr. Benski [sic] felt was her capacity and that was less than sedentary work?

ME1[4] Yes.

ALJ Then would you – do you have any disagreement with what Dr. Benski's [sic] limitations described as less than sedentary work?

ME1 I didn't see anything in the file that would indicate that but there may be new information, which I received.

ALJ Okay. All right. Okay. Well, in particular – well –

(Id.) At that point in the hearing, the ALJ was interrupted by David Anderson, M.D., who was described by the ALJ on the record as "our medical expert in psychiatry," and the ALJ did not return to this line of questioning he had been pursuing with Dr. Dewind. (See tr. at 293, 298-311.)

Dr. Anderson had interrupted to ask the date on Dr. Bensky's medical source statement. (Tr. at 299.) After Dr. Anderson was sworn in and asked his question, the ALJ stated that the date of the treating physician's statement was January 19, 2006. Dr. Anderson then testified as follows regarding the state of the record:

ME2 The challenge I have with Benski's [sic] notes, 13F page three and – I'm sorry, 5F page three and 5F page six these are probably three months apart. If you look under his progress notes there are complaints or objective [sic]. There's no physical exam at all. Then in this medical source statement he describes findings. Now, I don't know if that's based on a progress note or – I mean, that he saw the claimant again on the 19th, but in those two previous months there's no objective evidence or testing, reflex testing, sensation testing to kind of substantiate that was later January 19 of '05. I mean, of '06. And in the record that's – I find that it's a challenge in the "from a psychiatric standpoint" and also a medical standpoint that there's really insufficient evidence. She very well have had [sic] a recurrence of herniation but we don't have an MRI. We don't – I mean, there's all sorts of – really documentation

---

[4] Herein the court has adopted the court reporter's transcript references to Dr. Dewind as "ME1" and to Dr. Anderson as "ME2."

> of whatever is going on in her lumbar spine. I mean, people do re-herniate after discectomies and that may indeed be what happened and an MRI would show that very clearly. But we don't have that and they clearly had that to guide the initial surgery. I mean, there was a large herniation that was pushing on her nerve root. I mean, it was pretty straightforward. This is not – and there's really not either based on physical exam or – and I would say the same thing psychiatrically [sic]. We just have essentially a summary report of the psychiatric – the tragic death of a sister. But other than that we have really no cognitive testing. I mean, there's just – the record is really sparse.
>
> ME1 I would agree, your Honor.

(Tr. at 299-300.)

Dr. Anderson then clarified that he was "not saying . . . that there isn't something there but the objective evidence is not present to support the finding" and asked the ALJ whether he could tell "from that note of Benski's [sic] was that just a summary or was that actually an office visit." (Tr. at 300.) The ALJ responded that it looked like a summary, but plaintiff's counsel in the administrative proceedings interjected that January 19, 2006 was an office visit at which the Medical Source Statement form was completed by plaintiff's treating physician. (Tr. at 300-01.) Counsel referred the medical experts and the ALJ to plaintiff's office visit note dated January 19, 2006, in which the section titled "Clinical Findings/Treatment Provided" contains Dr. Bensky's notation to "See Medical Source Statement." (Tr. at 301) (citing Ex. 5F2 [tr. at 229]). Dr. Anderson thanked counsel, indicating that he had not noticed the reference to the medical source statement. The ALJ added that the last page of the medical source statement also contained "some descriptions of her exam." (Tr. at 301.) Despite these clarifications, Dr. Anderson remarked that "this was a single date point . . . 18 months ago." (Id.)

The ALJ then addressed plaintiff briefly concerning her treatment, and the second half of the 33-minute hearing consisted of plaintiff's testimony in response to questions asked by the ALJ and plaintiff's administrative counsel. (Tr. at 302-10.) At the conclusion of plaintiff's testimony, the ALJ asked Dr. Anderson, "as far as her mental status is concerned is there

evidence in the record of a severe mental impairment of 12 months duration," and Dr. Anderson answered "No," whereupon the ALJ thanked plaintiff for coming and closed the hearing without asking Dr. Dewind for his final opinion after it was established on the record that Dr. Bensky had conducted an examination of plaintiff on the date the medical source statement was completed. (Tr. at 310.)

Although it is the claimant's burden to prove that she is disabled, it is well established that the ALJ has an affirmative duty throughout the administrative proceeding to fully and fairly develop the record and to assure that the claimant's interests are considered. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ must fulfill his independent duty to fully develop the record. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). When a claimant is not represented by counsel, the ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, the ALJ's duty to develop the record is present even if the claimant is represented by counsel. De Lorme, 924 F.2d at 849. The ALJ's duty in this regard is also heightened in cases where the claimant has mental impairments and may not be able to protect her own interests. Id.; De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). See Brown, 713 F.2d at 443. When confronted with ambiguous evidence or a record inadequate to permit proper evaluation of the evidence, it is the ALJ's duty to "conduct an appropriate inquiry." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). The ALJ can discharge this duty in various ways, such as (1) making a reasonable attempt to obtain additional medical evidence from the claimant's treating sources, (2) ordering a consultative examination where the medical evidence is incomplete or unclear, (3) subpoenaing the claimant's physicians or their records, (4) submitting questions to the claimant's

physicians, (5) continuing the hearing, and (6) keeping the record open for supplementation. Tonapetyan, 242 F.3d at 1150; 20 C.F.R. §§ 404.1517 & 416.917; 42 U.S.C. § 423(d)(5)(A) & (B).  In order to demonstrate that an ALJ's decision should be set aside and the case remanded due to the ALJ's failure to fully develop the record, the claimant must show that she suffered prejudice or unfairness in the administrative proceeding.  Higbee, 975 F.2d at 561-62; Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981); Potts v. Astrue, No. CV 10-2781-JEM, 2011 WL 995856, at *4-5 (C.D. Cal. Mar. 17, 2011); Ramon v. Astrue, Civil No. 09cv2400-BEN (CAB), 2010 WL 5829547, at *11 (S.D. Cal. Dec. 30, 2010); Belcher v. Astrue, No. 1:09cv01234 DLB, 2010 WL 2353524, at *18-20 (E.D. Cal. June 9, 2010); McCormick v. Barnhart, No. C01-4489 MMC, 2004 WL 769386, at *13-14 (N.D. Cal. Apr. 6, 2004).

    The court finds that the ALJ's duty to develop the record was triggered in this instance by ambiguous evidence and a record that was inadequate to allow for proper evaluation of the evidence.  The court notes that the administrative hearing lasted only 33 minutes, and the 18-page transcript of that hearing reflects that approximately half of that time involved the two medical experts' attempts to evaluate the treating source's opinion based on hearing portions of that opinion read to them over the telephone.  Moreover, both of the medical experts found the record before them inadequate for proper evaluation.  Dr. Dewind, after hearing the limitations found by the treating physician, changed his opinion from no severe impairment at the present time to possible listing level impairment, but ultimately declined to give an opinion on the severity of plaintiff's impairment due to the sparse record.

    The ALJ could have continued the hearing and arranged for the treating source's opinion to be sent to the medical experts so that they could study it and consider it in the context of the treating records.  The ALJ could also have updated the record to satisfy Dr. Dewind's desire for treatment records beyond October 2006 by requesting additional records from Dr. Bensky or by leaving the record open to permit plaintiff's counsel to request such records. Instead, the ALJ abruptly concluded that plaintiff did not have a physical or mental impairment

that lasted for 12 consecutive months based on his interpretation of the medical experts' testimony as comprising opinions that "there is no objective evidence in support of the medical source statement completed by Dr. Bensky." (Tr. at 98.) However, the transcript of the experts' testimony contradicts the ALJ's interpretation, as the experts were not provided with a copy of the medical source statement and initially believed that Dr. Bensky had completed the statement without an office visit and without any examination. As noted above, the ALJ did not elicit any further opinion from Dr. Dewind after it was established that Dr. Bensky's statement was completed during an office visit when Dr. Bensky had in fact examined plaintiff.

The court is unpersuaded by defendant's attempt to shift the blame for the state of the record to plaintiff's attorney. Although defendant asserts that plaintiff's counsel "conceded that she had failed in her responsibility to provide the subject evidence to the MEs prior to the hearing," plaintiff's counsel made no such concession and the regulations cited by defendant refer only to a claimant's responsibility for bringing to the Commissioner's attention everything that showed she was disabled. See 20 C.F.R. §§ 404.1512(a) & 416.912(a). It is obvious from the administrative hearing testimony that plaintiff's counsel had provided the Commissioner with Dr. Bensky's medical source statement, and counsel acknowledged that while she usually sent copies to medical experts, it was not her responsibility to provide the Commissioner's medical experts with the necessary medical records. Moreover, even if that responsibility were shifted to the claimant, it is still the ALJ's duty to fully develop the record.

The court finds that plaintiff experienced prejudice and unfairness in the administrative proceeding as a result of the ALJ's failure to take adequate steps to fully develop the record in this case. Plaintiff is therefore entitled to summary judgment in her favor on her argument that the ALJ failed to fully develop the record.

**II. Improper Rejection of Treating Physician's Opinion**

Plaintiff also argues that the ALJ committed legal error in rejecting her treating physician's opinion without evidence supporting such rejection. In particular, plaintiff asserts

that there was considerable confusion regarding Dr. Dewind's opinion, and the ALJ's interpretation of that opinion mis-stated the record and failed to provide a basis for rejecting the treating physician's opinion. Plaintiff contends that Dr. Dewind's belief that the record did not show the degree of plaintiff's impairment was unreliable because the record belies his statement that Dr. Bensky's treatment records did not describe plaintiff's pain or other findings. In this regard, plaintiff provides a chart showing each treatment note and the facts regarding the location, type, duration, and level of pain reported by plaintiff from September 26, 2005 through October 3, 2006. (Pl.'s Mot. for Summ. J. (Doc. No. 13) at 9.) Plaintiff concludes that the ALJ erred in relying on an expert opinion that was apparently based on failure to read the record with care.

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. However, the ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).

Here, defendant contends that the ALJ properly weighed all of the medical evidence and appropriately gave controlling weight to the opinion of a consultative examiner who examined plaintiff on September 19, 2005, and found no objective findings to support plaintiff's claim of low back pain. (Tr. at 244-47.) The record reflects that the consultative examiner, Dr. Kim, was provided no medical records to review. (Tr. at 244.) Dr. Kim found that plaintiff did not appear to be any distress and believed that plaintiff was simply giving "very poor effort" during range of motion testing, rather than holding back because of pain. (Tr. at 245.) Dr. Kim recorded that plaintiff "was seen" getting into her "low lying" sports car with no difficulty after she departed the clinic. (Id.)

The ALJ gave more weight to the opinions of the consultative examiner who saw plaintiff once, a chiropractor who gave plaintiff a series of treatments over the course of a month and proclaimed her cured, the surgeon who opined that his surgery was a success but was unable to treat plaintiff for the pain that arose after the surgery because plaintiff could not afford to pay for an MRI, and the state agency physicians who reviewed the records, than he gave to treating physician Dr. Bensky's opinions. (Tr. at 99.) The ALJ justified giving less weight to Dr. Bensky's medical source statement by finding it "internally inconsistent as evidenced by his opinion regarding claimant's ability to walk for 1 hour at a time for a total of 1 hour during an 8-

hour day"; his treatment was irregular and consisted almost entirely of refilling prescriptions and making entries regarding plaintiff's disability applications, except for his examination in January 2006; he is not an orthopedic specialist; his opinion about the extent of plaintiff's physical limitations is not supported by objective evidence and is contrary to all of the other medical opinions; and the determination of disability is reserved to the Commissioner. (Id.)

After careful consideration of the reasons stated by the ALJ for giving no discernible weight to Dr. Bensky's opinions, the court finds that the stated reasons for rejecting the treating physician's opinion are not legitimate. For instance, objective evidence in the record reflected plaintiff's lumbar surgery and documented pain related thereto, both before and after the surgery. (Tr. at 197, 202, 213, 219-20, 234-35, 284-90.) Plaintiff is therefore entitled to summary judgment in her favor on her claim that the ALJ committed legal error in rejecting Dr. Bensky's opinion without a legitimate reason. On remand, the ALJ should give more careful consideration to the medical opinions in accordance with the applicable legal standards.

**III. Use of Consultative Examiner's Opinion to Diminish Plaintiff's Credibility**

Plaintiff next argues that Dr. Kim's consultative examination is unreliable on its face because of the conclusion that plaintiff, post-lumbar surgery, could lift 50 pounds frequently and up to 100 pounds occasionally with no postural limitations. Plaintiff contends that the ALJ erred when he used Dr. Kim's opinion to discount plaintiff's credibility. Plaintiff notes that the neurosurgeon who performed her surgery documented the onset of plaintiff's hip and joint pain in June 2004 and noted that the pain and numbness appeared to be worsening. (Tr. at 213.) The neurosurgeon's examination revealed "some tenderness around the right hip area," pain caused by internal and external rotation of the hip, as well as flexion and extension, and diminished reflexes at the knees and ankles. (Id.) With such documented problems, plaintiff asserts, Dr. Kim's finding with respect to her ability to lift is unreliable and casts doubt on the use of Dr. Kim's opinion for the purpose of discounting plaintiff's credibility.

/////

Once a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged, the ALJ may not discredit the claimant's own testimony as to the severity of her symptoms merely because the degree of severity is unsupported by objective medical evidence. Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Reddick, 157 F.3d at 722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence along with many other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his own observations of the claimant. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

With respect to daily activities, it is well established that claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). Daily activities may be

grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). In order to conclude that the claimant's activities warrant an adverse credibility determination, however, the ALJ must make specific findings relating to the claimant's daily activities and the transferability of those activities to the work setting. Id.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee, 94 F.3d at 522. As a general rule, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5. Absent affirmative evidence of malingering, however, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

Here, the ALJ found plaintiff's allegations and testimony regarding her physical and mental limitations and the severity of her pain "not totally credible because they are not supported by objective findings or clinical findings and they are inconsistent with her activities." (Tr. at 98.) The ALJ relied in part on consultative examiner Dr. Kim's findings that plaintiff had no difficulty walking, sitting, getting on and off the examination table, and getting into her sports car and driving it. Dr. Kim's speculation regarding plaintiff's alleged failure to give full effort during range of motion tests is not affirmative evidence of malingering, and in the absence of any such evidence, the ALJ was required to give clear and convincing reasons for rejecting plaintiff's hearing testimony regarding her ability to drive her sports car. (Tr. at 306-07.) On remand, the ALJ must reconsider his decision to discount plaintiff's allegations regarding pain, while keeping in mind the lack of affirmative evidence of malingering, and be specific about any subjective

allegations with respect to pain that are rejected.

**CONCLUSION**

The court has determined that plaintiff is entitled to summary judgment in her favor on all three of her arguments. The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit Court of Appeals has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401. Here, however, the record is undeveloped and it is therefore necessary to remand for the taking of additional evidence.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 13) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 17) is denied;

3. The Commissioner's decision is reversed; and

4. This case is remanded for further proceedings in accordance with this order.

DATED: March 30, 2011.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/fradenburg3064.order